UNITED STATES of America,

v.

Jean DEMOSTHENE, Defendant.

No. 03 CR. 1409(VM).

United States District Court,
S.D. New York.

Aug. 16, 2004.

Jessica A. Roth, Assist. U.S. Atty., Criminal Division, New York, NY, for U.S.

### DECISION AND ORDER

MARRERO, District Judge.

Trial in this matter commenced on Au-

gust 3, 2004.[1] By letter dated July 21, 2004, the Government filed a motion *in limine* seeking to preclude the defendant Jean Demosthene ("Demosthene") from introducing certain evidence and/or making particular arguments to the jury during the trial. By letter dated July 29, 2004, the Court received Demosthene's response to the Government's motion, to which the Government subsequently filed a reply by letter dated July 30, 2004. After consideration of the parties' arguments in light of the relevant evidentiary standards, the Government's motion is granted-in-part and denied-in-part.[2]

## I. *DISCUSSION*

### A. *ARGUMENTS REGARDING THE GOVERNMENT'S INVESTIGATION*

The Government asserts that Demosthene may not argue or otherwise suggest in his cross-examination of Government witnesses that the investigation of Demosthene was in any way improper; or that it was improper for the Government to supercede the indictment in this case. In response, Demosthene argues that he does not intend to argue or pursue these matters during the trial, but rather, will seek to challenge only the motives and veracity of Government witnesses who testify to the effect that the altercation of July 12, 2003 was drug-related.

 Under Federal Rule of Evidence 607, Demosthene is entitled to impeach the veracity of any Government witness through cross-examination, and thus, his proposed exploration of such witnesses' motives and veracity is permissible. This impeachment may include questions regarding whether, as Demosthene alleges in

his response to the Government's motion, any such witness acted improperly by falsifying evidence during the course of his or her investigation.

 The Court notes, however, that under the Second Circuit's decision in *United States v. Regan,* 103 F.3d 1072 (2d Cir.1997), Demosthene may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case. *See id.* at 1082. Specifically, any discussion of the reasoning behind the Government's decision to supersede its original indictment would be improper. In addition, any attempt by Demosthene to dissect an individual law enforcement agent's state of mind during the course of the investigation, or to belabor the details of the investigation's chronological development, would be irrelevant to the central question of Demosthene's guilt or innocence, and as such, is inadmissible. *See United States v. Reyes,* 18 F.3d 65, 71 (2d Cir.1994).

### B. *DEMOSTHENE'S STATEMENTS*

The Government also seeks to preclude Demosthene from introducing at trial any of his own statements that do not fall into a recognized hearsay exception under the Federal Rules of Evidence, and in particular, Demosthene's written recantation of pre-arrest statements, which would be offered to highlight changes between the different explanations Demosthene offered to investigating officers before and after his arrest on October 26, 2003.

In response, Demosthene argues that his written post-arrest statements are relevant because the Government seeks to introduce his earlier false statements to

---

**1.** The Court presumes familiarity with the underlying facts of this case.

**2.** The Court also articulated its reasons for its ruling on the record at trial on August 3, 2004.

demonstrate a consciousness of guilt. Thus, Demosthene posits that his later written recantation rebuts the Government's suggestion of a consciousness of guilt and that on these grounds, the statements are relevant only because they were made and not for their truth. The Court does not agree.

■ Under the Federal Rules of Evidence, a defendant generally may not introduce his own prior statement for the truth of the matters asserted therein. *See* Fed.R.Evid. 801(d)(2)(a). In cases where a defendant seeks to introduce his own statements for the sole purpose of demonstrating that they were made, the fact that such statements were made must be relevant to the central issues in the case. *See United States v. Marin,* 669 F.2d 73, 84 (2d Cir.1982). Under these principles, the Court is not persuaded by Demosthene's argument that his post-arrest statements are in fact probative for the purpose he offers merely because they were made. By seeking to introduce such statements, Demosthene is, in essence, attempting to present a second version of his own admissions in order to permit the jury to decide which of the two versions to credit.[3] Such a substantive comparison between Demosthene's two statements would not admissible under either Federal Rule of Evidence 801(d)(2)(a) or the Second Circuit's holding in *Marin.*

■ However, to the extent that Demosthene seeks to use his post-arrest statements for any purpose other than for the truth of the matter asserted, for example, under Federal Rule 613(b) to impeach a Government witness who has personal knowledge of the statements, they may be admissible solely for this limited purpose.

Under these circumstances, Demosthene would first need to establish a proper foundation at trial for the use of the statements for this purpose.

■ Similarly, if Demosthene were to testify at his trial regarding the events of October 26, 2003, the Court would exercise its discretion under Federal Rule of Evidence 611(a) and permit Demosthene to provide a running narrative of the events as he experienced them, including statements he may have made as the events were unfolding. *See* Fed.R.Evid. § 611(a). In this regard, any out-of-court statements testified to would not be offered in isolation for the truth of the matter asserted, but rather, in the context of a series of events perceived by Demosthene, akin to a present sense impression. *See* Fed. R.Evid. 803(1); *see also* 6 Wigmore on Evidence § 1732(4) (1976); Michael H. Graham, Handbook of Federal Evidence, § 611.15 (2001). The Court, however, will not permit Demosthene to introduce the text of his written recantation standing alone, or to invite the jury to draw any comparison between different statements Demosthene made to law enforcement officials, as such a comparison will necessarily entail asking the jury directly to choose which version of the truth of the statements to credit. The Court concludes that Demosthene's recantation statement presented pointedly under these circumstances would constitute a violation of the hearsay rule.

C. *TAPE RECORDED CONVERSATION*

■ The Government also seeks to preclude Demosthene from introducing at tri-

---

**3.** As the Court explained on the record at trial, Demosthene's post-arrest statements would be relevant merely because they were said if, for example, the matter in contention was whether Demosthene was sleeping at the time the alleged statements were made. Un-

der these circumstances, the utterance of the statements in and of itself and regardless of their truth would be relevant solely to establish that Demosthene was in fact awake at the relevant time.

al a tape-recorded conversation between Demosthene's wife, and the Government's cooperating witness, Joseph Galette ("Galette" and also referred to as "CC–1") on the grounds that the tape is inadmissible hearsay evidence. In response, Demosthene asserts that it would seek to introduce the tape only for impeachment in the event Galette denies having made the statements contained in the recording.

The Court finds that the recording constitutes an unsworn, out-of-court statement by a testifying witness that does not fall within any recognized exception to the hearsay rule. As such, it may not be admitted to prove the truth of the matters asserted therein. As discussed above with respect the Demosthene's post-arrest statements, however, Federal Rule of Evidence 613(b) would permit Demosthene to use the tape recording to impeach Galette if Galette denies having made the statements he made in the taped recording or directly contradicts statements made therein. Before using the tape to impeach Galette, however, Demosthene must first provide a proper foundation upon which to authenticate the tape recording. Galette also must be given an opportunity to explain any inconsistency that may exist and the Government will be permitted to interrogate Galette regarding the inconsistency. See Fed.R.Evid. 613(b); United States v. Strother, 49 F.3d 869, 874 (2d Cir.1995).

### D. INTERCEPTED PHONE CONVERSATIONS

Finally, the Government seeks to preclude Demosthene from introducing any of the phone conversations intercepted by the United States Drug Enforcement Agency (DEA) that were provided by the Government pursuant to its disclosure requirements under 18 U.S.C. § 3500. The Government asserts that these phone conversations constitute hearsay that may be introduced only by the Government against Demosthene as statements of co-conspirators under Federal Rule of Evidence 801(d)(2)(E). In response, Demosthene argues that if the Government introduces certain phone calls against him, he should not be precluded from introducing other calls that either clarify or contradict whatever calls the Governments elects to introduce.

▮ The Court construes Demosthene's argument as invoking the so-called "Rule of Completeness" embodied in Federal Rule of Evidence 106 ("Rule 106"). Rule 106 states that the Court should permit an adverse party to introduce other portions of previously-introduced writings or recordings that ought, in fairness, be considered contemporaneously with the previously admitted portions. See Fed.R.Evid. 106. The Second Circuit has explained that Rule 106 allows the introduction of other portions of writings or recordings when they are necessary to explain an earlier-admitted portion, to place the earlier-admitted portion in context, or to avoid misleading the jury. See United States v. Rivera, 61 F.3d 131, 135–36 (2d Cir.1995). Rule 106 does not, however, require the introduction of recorded material that is "neither explanatory of nor relevant to" previously-admitted portions of a recording. See Marin, 669 F.2d at 84.

Because it is not clear at this point which particular intercepted phone call Demosthene may seek to introduce, the Court will rule on the admissibility of a particular phone call once the call is identified and Demosthene clearly establishes its purpose. In this regard, the Court notes that Demosthene will have to demonstrate in each instance how the phone call he seeks to introduce satisfies the requirements of Rule 106 discussed above. While the Court is mindful that Rule 106 does not

render admissible evidence that is otherwise inadmissible, *see United States v. Terry,* 702 F.2d 299, 314 (2d Cir.1983), it will consider Demosthene's requests on a case-by-case basis.

## II. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the Government's motion *in limine* to preclude defendant Jean Demosthene ("Demosthene") from introducing certain evidence and/or making particular arguments to the jury during trial is granted-in-part and denied-in-part. Demosthene may question Government witnesses regarding their motives and veracity regrading their investigation of this case. Demosthene, however, may not argue or otherwise suggest that the Government's investigation of Demosthene was in any way improper or that it was improper to supercede the indictment in this case; and it is further

**ORDERED** that Demosthene may introduce his post-arrest statements to law enforcement officials only if he can establish a plausible theory upon which to admit them other than for the truth of the matter asserted therein and only upon the establishment of a proper foundation for the statements; and it is further

**ORDERED** that Demosthene may introduce the tape recorded conversation between the Government's cooperating witness, CC–1, and Demosthene's wife only for impeachment of the Government's cooperating witness, CC–1, in the event CC–1 denies having made the statements while testifying and Demosthene lays a proper foundation to authenticate the recording. Under these circumstances, CC–1 must be given an opportunity to explain whatever inconsistency there may be between his testimony and statements made on the tape and the Government may also question CC–1 as to the tape recording; it is further

**ORDERED** that before the Court will permit Demosthene to introduce any recorded telephone conversations intercepted by the Drug Enforcement Agency, Demosthene must demonstrate to the Court, on a case-by-case basis, how the phone conversation sought to be introduced satisfies the requirements of Federal Rule of Evidence 106.

**SO ORDERED.**